UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 08-cr-00053 |
| VERSUS | JUDGE STAGG |
| JARMARSAY KION SMITH | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

Before the court is Defendant's Motion to Suppress (Doc. 12). For the reasons that follow, it is recommended that Defendant's motion be denied.

## Facts

An evidentiary hearing was held on May 23, 2008. The hearing established the following facts:

On January 15, 2008, Detective Mike McConnell, an investigator with the Shreveport Police Department's Violent Crimes Unit, received a tip from a citizen that Defendant was residing at Country Club Apartments on Lakeshore Drive in Shreveport and that Defendant had an outstanding warrant for his arrest. The citizen also told Detective McConnell that Defendant was in possession of firearms.

Detective McConnell checked Defendant's criminal history and found convictions for felony gun and drug offenses. Tr. 133; Government Exhibit 1. Detective McConnell contacted Cpl. Robert Robinson for his assistance in apprehending Defendant on the warrant.

The officers contacted the Bossier City Police Department and confirmed that the arrest warrant was still active. Government Exhibit 2; Tr. 24, 26. The bench warrant was issued by a Bossier City court judge on April 26, 2006 as a result of Defendant's failure to abide by a payment plan for a fine on a minor traffic offense. Government Exhibit 9.

The officers, who were assisted by several other officers, went to the apartment complex to apprehend Defendant. After meeting with the apartment manager, the officers asked the apartment maintenance man to knock on the door of Apartment 205. Tr. 28-29. The door was opened by Latroy Smith, Defendant's brother. Defendant, who the officers recognized from a photograph, was standing behind Latroy in the living room area near a closet.

The officers entered the apartment. Agent Robinson made contact with Defendant and orally advised him of his Miranda rights. As Defendant was being taken into custody, he told the officers, "I'm who you are looking for." When asked why he thought the officers were looking for him, Defendant replied, "I got a warrant." Tr. 30.

Defendant and his brother were placed on separate couches in the living room of the apartment. Defendant was sitting on the couch facing a closet. Defendant's brother was on the other couch with his back to the closet. Tr. 31; Government Exhibit 3.

Detective McConnell and other officers immediately performed a protective sweep of the apartment to check for other persons within the apartment. Tr. 36. Defendant told Agent Robinson that whatever was found in the apartment belonged to him. During the

protective sweep, Detective McConnell opened the door to the closet in the living room and observed a large mound of clothes. Tr. 36. Detective McConnell pulled back the clothes and discovered two AK-47-type rifles. Tr. 36-37. Both Agent Robinson and Detective McConnell testified that the pile of clothes was sufficient to conceal a person within the closet. Tr. 92, 141.

Defendant claimed ownership of the guns. Tr. 38. Defendant then gave the officers verbal consent to search the apartment. Tr. 38-39. Defendant told the officers that he had additional guns in his bedroom. Tr. 39. During a search of the bedroom, two loaded pistols were discovered in Defendant's dresser. In the kitchen, the officers found some marijuana, baggies, and a digital scale. Tr. 40.

Defendant was arrested on his outstanding warrant and for the guns and drugs. Defendant's brother, who had six outstanding warrants, was also arrested. Tr. 40-41.

At the Shreveport Police Department, Defendant was again advised of his Miranda rights orally and in writing (Government Exhibit 4). In a taped interview with Agent Robinson (Government Exhibit 5), Defendant admitted ownership of the rifles and pistols. Tr. 42-43. A federal grand jury later indicted Defendant for being a felon in possession of firearms and ammunition. Doc. 1.

**Defendant's Arguments**

Defendant argues that the bench warrant issued by Bossier City Court for Defendant was invalid and cannot be used by the Government to justify entry into Defendant's

apartment. Defendant argues that there is no proof that Bossier City sought to notify Defendant of the unpaid fine that led to the issuance of the bench warrant. Defendant argues that the authorities were looking for an excuse to arrest Defendant and the officers used the Bossier City Court bench warrant as a pretext for Defendant's arrest. Defendant argues that, even if the arrest of Defendant is upheld, the officers entry into the closet cannot be justified as part of the protective sweep. Defendant concedes that it was reasonable for the police officers to check the bedroom, kitchen and bathroom to make sure no one was hiding in those areas, but it was not reasonable for the officers to enter the closet.

Defendant does not challenge the voluntariness of his statements or of the verbal consent he gave to the search of the apartment. However, Defendant argues that, because the arrest was illegal, his statements and the results of the search should be suppressed as fruit of the poisonous tree.

**Law and Analysis**

Police armed with an arrest warrant have the authority to enter the residence of the person named in the warrant in order to execute the warrant where there is reason to believe that the suspect is within the residence. Payton v. New York, 445 U.S. 573, 602-603 (1980); United States v. Route, 104 F.3d 59, 62 (5th Cir. 1997).

Before the officers approached Defendant's apartment, the officers verified that the bench warrant for Defendant was still outstanding. When Defendant's brother answered the knock on the door, the officers immediately saw Defendant in the living room of the

apartment. The bench warrant authorized them to enter the apartment to arrest Defendant, search Defendant's person, and search the areas within his immediate control. United States v. Mata, 517 F.3d 279, 285 (5th Cir. 2008).

Defendant's arguments regarding pretext are unavailing. The officers' motives in executing the arrest warrant are irrelevant. United States v. Causey, 834 F.2d 1179, 1184-1185 (5th Cir. 1987) (en banc) ("So long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry. ... Where nothing has been done that is objectively unlawful, the exclusionary rule has no application and the intent with which [the officer's acted] is of no consequence."). Causey held that an arrest based on a year-old warrant for failure to appear on a petty theft charge was valid and required no suppression even when the officers admitted they executed the warrant so they could question the defendant about a recent armed robbery. The holding in Causey forecloses Defendant's principal argument in this case.

The protective sweep of the apartment, including entry into the closet where the rifles were hidden, was justified based on Defendant's proximity to the closet at the time of his arrest, Defendant's criminal history for illegal guns and drugs, and based on the tip received by the officers that Defendant was in possession of firearms. Maryland v. Buie, 494 U.S. 325, 334 (1990); United States v. Mata, 517 F.3d at 285. Officers were also able to inspect the nearby closet (regardless of cause or suspicion) as a search incident to the arrest. United States v. Virgil, 444 F.3d 447, 451 (5th Cir. 2006).

**Conclusion**

Defendant's arguments are without merit. Defendant was arrested pursuant to a valid warrant of the Bossier City Court. The officers properly entered Defendant's apartment to execute the warrant, and the rifles were found pursuant to a proper protective sweep of the apartment and search incident to the arrest. The handguns were found pursuant to a valid consensual search of the apartment.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (Doc. 12) be **denied**.

**<u>Objections</u>**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

Shreveport, Louisiana, this 30th day of June, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE